**John Edward GARRETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–90–00678–CR.**

Court of Appeals of Texas, San Antonio.

Oct. 31, 1991.

Michael Valicek, San Antonio, for appellant.

Steven C. Hilbig, Jose Luis Gonzales, Chris De Martino, and Daniel Thornberry, Crim. Dist. Attys. Office, San Antonio, for appellee.

Before CHAPA, BIERY and CARR, JJ.

## OPINION

BIERY, Justice.

John Edward Garrett, appellant, was convicted by a jury of the offense of burglary of a habitation; punishment was assessed by the trial judge at ninety-nine years in prison.

Appellant presents one point of error in which he contends the trial court erred in sentencing him without first having prepared a presentence report pursuant to TEX.CODE CRIM.PROC.ANN. art. 42.-12, § 9(i) (Vernon Supp.1991). Appellant contends the statute is mandatory when it appears to the court that a person convicted of a felony has a mental impairment, and evidence of "mental illness" is the equivalent of "mental impairment." We reverse for error in the punishment phase only.

In pretrial proceedings, the trial court ordered appellant to be examined by a psychiatrist to determine his competency to stand trial. Specifically, appellant was to be evaluated as to whether he was mentally ill or mentally retarded. In the first of two reports, the county psychiatrist found appellant was not presently competent to stand trial, was mentally ill, but it was substantially probable that he would attain competency in the foreseeable future. The report also found that appellant was not mentally retarded. Appellant was found to have "mixed organic brain syndrome and undifferentiated schizophrenia," and his "intellectual functioning [was] estimated to be below average based on his general fund of knowledge, vocabulary, and complexity of concepts." Appellant was found to have an IQ of 95, and his educational evaluation showed that in reading, spelling, and arithmetic, he was at the beginning sixth to eighth grade level; however, his reading skills were only at the fourth grade level. Subsequently, appellant was found competent to stand trial.

Upon receiving the jury's verdict of guilt, the trial court proceeded to the punishment phase, the appellant having elected to have the trial judge assess punishment. In addition to the mental health evidence already heard by the trial judge in the competency hearing, additional evidence was presented at the punishment phase consisting of records of the San Antonio State Hospital of the Texas Department of Mental Health and Mental Retardation concerning the appellant.

The following issues are presented:

1) Does TEX.CODE CRIM.PROC.ANN. art. 42.12 § 9(i) (Vernon Supp.1991) mandate that a presentence investigation be conducted when the circumstances therein stated are present?

2) Does this record sufficiently establish a "mental impairment," thereby invoking the provisions of art. 42.12 § 9(i)?

3) If the provisions of art. 42.12 § 9(i) are invoked, can the requirement under this article be waived by appellant's failure to object to the trial court's proceeding to sentence without the investigation?

■ Under the provisions of art. 42.12 § 9(i), it is mandatory that:

A presentence investigation *shall be conducted* on any offender convicted of a felony offense *if it appears to the court through its own observation or on suggestion of a party* that the defendant may have a mental impairment. The presentence investigation shall include a psychological evaluation which determines, at a minimum, the defendant's IQ and adaptive behavior score. The results of the evaluation shall be included in the report to the court as required by Subsection (a) of this section.

TEX.CODE CRIM.PROC.ANN. art. 42.12 § 9(i) (Vernon Supp.1991) (emphasis added). Webster's dictionary associates impairment with a weakness, deterioration, or damaged condition. Thus, it would necessarily follow that "mental impairment" would encompass a mental weakness, deterioration, or damage. If the record reflects that such a condition may exist, the legislature has required the presentence investigation. TEX.CODE CRIM.PROC.ANN. art. 42.12 § 9(i) (Vernon Supp.1991).

Considering the appellant's history of mental illness, as fully outlined in the concurring opinion, it appears the appellant may have had a mental impairment. Therefore, a presentence investigation was required.

■ The State contends the appellant waived any complaint under art. 42.12 § 9(i) by failing to object to the lack of a presentence investigation. We are unable to find any authority to justify the contention that the provisions of art. 42.12 § 9(i) can be forfeited if evidence of mental impairment exists. The statement of facts reveals that at the sentencing hearing, appellant's counsel had no additional evidence on the mental issue only because the court had already heard all the evidence presented during the competency hearing. Fur-

ther, the very last plea appellant's counsel made to the court before the court sentenced the appellant was that appellant "need[ed] help," that appellant needed "proper treatment," that TDCJID did not have "the kind of programs that [appellant] need[ed]," and that appellant "need[ed] the support of his family, the State Hospital, and therapy."

As a practical matter, the presentence report will contain the mental health information already in the trial court record, albeit on a form entitled "presentence report." There may, however, be additional, subsequent information or suggestions for treatment embodied in the report. Moreover, the ultimate result may be the same; however, we hold that we are not authorized to judicially rewrite an express legislative mandate. *See Sodipo v. State*, 815 S.W.2d 551 (Tex.Crim.App.1991) (opinion on State's motion for rehearing).

The cause is remanded for new trial on the punishment phase only. TEX.CODE CRIM.PROC.ANN. art. 44.29(b) (Vernon Supp.1991).

CHAPA, Justice, concurring.

I respectfully concur.

In this case, the record reflects that on January 2, 1990, appellant's counsel filed a motion for psychiatric examination of the appellant, based on the fact that the appellant "ha[d] a long history of mental illness, ha[d] been a patient in a psychiatric facility as recently as August, 1988, and ha[d] previously been diagnosed as suffering from Mixed Organic Brain Syndrome and Undifferentiated Subchronic Schizophrenia." As a direct result, the court ordered the office of the county examiner to examine appellant to determine if appellant "ha[d] sufficient present ability to consult with defense counsel with a reasonable degree of rational understanding and whether the Defendant ha[d] a rational as well as factual understanding of the proceedings against him," "[w]hether the Defendant [was] mentally ill," and "[w]hether the Defendant [was] a mentally retarded person." On the 8th of March, 1990, Dr. Michael Arambula,

a psychiatrist, submitted an evaluation to the effect that the appellant "[was] not mentally competent to stand trial" but "[would] attain competency in the foreseeable future"; that the appellant "[was] mentally ill"; and, that the appellant "[was] not mentally retarded." In his detailed report, which is also part of the record, Dr. Arambula reveals that the medical records at the Detention Center indicate that the appellant attempted to hang himself after being caught stealing from the commissary; that the appellant broke his right metacarpal by hitting a door after complaining of weeping and hearing voices; that appellant again attempted to hang himself after breaking his hand; that the appellant masturbated while a mental health worker evaluated him; that the appellant took showers with his clothes on and hit two different inmates; that appellant complained that Michael Jackson was telling him what to do and would not leave him alone; and, that the appellant was taking 200 mg. of Tegretol twice a day, 10 mg. of Stelazine twice a day and 15 mg. of Stelazine at bedtime. Dr. Arambula concluded with a diagnosis of Schizophreniform Disorder. On April 9, 1990, appellant's counsel filed a motion for a competency hearing to stand trial based on the allegations that the appellant "appear[s] not to have a rational or factual understanding of the proceedings against him," the appellant "has had a prolonged personal history of mental inadequacy," and appellant's "incompetency to stand trial has been substantiated by the findings resulting from an examination by MICHAEL ARAMBULA, M.D." On April 10, 1990, Dr. John C. Sparks, the county medical psychiatrist, submitted his findings to the effect that the appellant was "mentally competent to stand trial," that the appellant was "mentally ill," and that the appellant was "not mentally retarded." In his detailed report, Dr. Sparks states that the appellant "appears to be mentally ill," that the appellant "has very little affect," that the appellant "has a history of auditory hallucinations," and that the appellant was diagnosed as suffering from "schizophrenia, chronic, undifferentiated type."

The record further reflects that a competency hearing was held before a jury wherein the court charged the jury on the law of competency. On October 30, 1990, the jury returned a verdict that the appellant was "competent to stand trial," and that the appellant was "mentally ill and meeting the criteria for court ordered mental health services."

After trial on the merits, the jury found the appellant guilty as charged, and the statement of facts disclosed the following exchange immediately prior to sentencing:

THE COURT: Do you have anything further?

PROSECUTOR: No, Your Honor. With that we will rest. We will just reoffer all of the evidence in the Case in Chief.

DEFENSE COUNSEL: Your Honor, having—

THE COURT: I'm sorry?

DEFENSE COUNSEL:—having you been in here and heard the competency examination and everything, we do not have any evidence to offer.

THE COURT: All right. Does either side wish to argue?

PROSECUTOR: Your Honor, we will waive our right to open and reserve our right to close.

THE COURT: Mr. Valicek [defense counsel]?

DEFENSE COUNSEL: Your Honor, there is no question that this young man needs help. The only issue is on how best to not only help him but society where these sorts of things don't happen anymore, in other words proper treatment. I don't believe that the State Department of Criminal Justice, otherwise, before known as TDC, has the kind of programs that John Garrett needs and that he needs the support of his family, the State Hospital, and therapy.

Clearly, counsel for appellant was attempting to make a plea to the court prior to the court's sentencing of the appellant. Thus, instead of waiving the provisions of art. 42.12 § 9(i), appellant's counsel not only suggested to the court that the appellant had a mental impairment, but also made a plea to the court for help by asking

the court to consider appellant's mental condition in the process of sentencing him. Considering the obvious purpose of art. 42.12 § 9(i), and the fact that the appellant received a sentence of 99 years, it seems clear that the implementation of the provisions of art. 42.12 § 9(i) could have only served to help the appellant; therefore, the failure to follow the mandatory statute was not harmless. TEX.R.APP.P. 81(b)(2).